IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AUTOMOTIVE INDUSTRIES PENSION
TRUST FUND, et al.,

    Plaintiffs,

  v.

LEW WILLIAMS INC,

    Defendant.
                                     /

No. C-11-02185 EDL

**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

On May 4, 2011, Plaintiffs filed a complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, alleging that Defendant is liable for payment of withdrawal liability resulting from Defendant's complete withdrawal from the Automotive Industries Pension Trust Fund. The complaint sought an order requiring, among other things, that Defendant pay the withdrawal liability as well as interest, liquidated damages, attorneys' fees and costs, and that Defendant furnish information to enable Plaintiffs to determine withdrawal liability issues.

On May 10, 2011, Defendant was served with the summons and complaint in this matter. See Docket No. 6. Defendant failed to answer the complaint or otherwise defend the action. On June 3, 2011, upon Plaintiffs' request, the Clerk of this court entered Defendant's default under Federal Rule of Civil Procedure 55(a). See Docket No. 8. By its default, Defendant is deemed to have admitted the well-pleaded averments of the complaint except those as to the amount of damages. See Fed. R. Civ. P. 8(b)(6).

On July 8, 2011, Plaintiffs filed a Motion for Default Judgment against Defendant. In this Motion for Default Judgment, Plaintiffs seek judgment against Defendant for the amount of the withdrawal liability, as well as interest, liquidated damages, attorneys' fees and costs in the total

1  amount of $899,050.58.  Although Plaintiffs have consented to this Court's jurisdiction pursuant to

2  28 U.S.C. § 636(c), Defendant is in default and has not consented.  At Plaintiffs' request, the Court

3  vacated the hearing that was set for August 30, 2011.  For the reasons stated below, the Court

4  recommends granting Plaintiffs' motion for default judgment.  This matter will be reassigned to a

5  district court judge.

**DISCUSSION**

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service.  See Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1).  Defendant is not a unrepresented minor or incompetent person, or a person in military service, or otherwise exempted from default judgment.  See Declaration of Philip Miller (Miller Decl.) ¶ 9.

ERISA provides:

> A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief.

29 U.S.C. § 1451.  An employer that withdraws from the Trust must pay withdrawal liability to the Trust.  29 U.S.C. § 1383.  Following the assessment of the withdrawal liability payment, an employer may challenge the assessment (29 U.S.C. § 1399(b)(2)), and thereafter, timely demand arbitration (29 U.S.C. § 1401(a)).  Failure to initiate arbitration within the statutory period constitutes a waiver of objections to the withdrawal liability calculation.  See Teamsters Pension Trust Fund - Bd. of Tr. of the Western Conference v. Allyn Transp. Co., 832 F.2d 502, 504 (9th Cir. 1987).

Plaintiffs have the burden of proving their entitlement to relief through testimony or written affidavit.  To that end, Plaintiffs submitted the declarations of: Michael Schumacher, the Executive Vice-President of Associated Third Party Administrators, the administrator for the Automotive Industries Pension Plan, and Philip Miller, Plaintiffs' counsel.  The evidence establishes that Defendant was a participating employer in the Automotive Industries Pension Fund pursuant to collective bargaining agreements with the Automotive Machinists and Mechanics Lodge No. 2182 for and on behalf of Machinists Automotive Trades District Lodge No. 190 of Northern California

I.A.M. & A.W., which required it to make fringe benefit contributions for all covered work performed by their employees. Declaration of Michael Schumacher (Schumacher Decl.) ¶ 5; Ex. A, B. By letter to the Plan dated May 8, 2008, Defendant notified the Plan of its intent to cease business operations effective June 9, 2008 and thereafter ceased paying contributions to the Plan in July 2008, and thereby made a complete withdrawal from the Trust under 29 U.S.C. § 1383. Schumacher Decl. ¶ 3. The Trust's actuary calculated the withdrawal liability of Defendant. Schumacher Decl. ¶¶ 3-4; Ex. D, E. By letter dated August 13, 2008, Plaintiffs notified Defendant of the withdrawal liability assessment payable in a lump sum or eighty quarterly payments beginning September 30, 2008. Schumacher Decl. ¶ 5; Ex. F. In the notice of assessment, Plaintiffs advised Defendant that it could challenge the withdrawal liability calculation by requesting review within ninety days of receiving the assessment. Id.; 29 U.S.C. § 1399(b)(2). Defendant failed to make any payments. Schumacher Decl. ¶ 6.

On November 20, 2008 and again on December 18, 2008, Plaintiffs' counsel notified Defendant that Defendant must cure its delinquent installment payments and advised that if payment was not received within sixty days, Plaintiffs would consider Defendant HRC in default. Miller Decl. ¶ 5; Ex. D, E. Defendant failed to cure its delinquent payments within sixty days. Miller Decl. ¶ 6. Therefore, Plaintiffs accelerated the withdrawal liability which became immediately due and payable with interest and liquidated damages. Miller Decl. ¶ 6; 29 U.S.C. § 1399(c)(5). As of July 7, 2011, no withdrawal liability payments have been made. Schumacher Decl. ¶ 7. Accordingly, pursuant to 29 U.S.C. § 1383, Defendant is liable for the assessed withdrawal liability of $651,046.00.

An award for interest, liquidated damages, attorneys' fees, and costs are mandatory under ERISA. 29 U.S.C. § 4301(b); Amalgamated Ins. Fund v. Geltman Indus., Inc., 784 F.2d 926 (9th Cir. 1986) ("in any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of Section 515."). Further, ERISA provides:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 (29 U.S.C. § 1145) in which a judgment in favor of the plan is awarded,

3

**United States District Court**
For the Northern District of California

> the court shall award the plan –
> (A) the unpaid contributions
> (B) interest on the unpaid contributions
> (C) an amount equal to the greater of
> (i) interest on the unpaid contributions,
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of the unpaid contributions],
> (D) reasonable attorneys fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986.

29 U.S.C. § 1132(g)(2).

Here, the Withdrawal Liability Procedures adopted by the Trustees entitles Plaintiffs to simple interest at the rate of 7% per annum. Miller Decl. ¶ 3; Ex. B, C; Schumacher Decl. Ex. B. Under ERISA, interest on the accelerated withdrawal liability amount accrues from the due date of the first delinquent installment payment. 29 U.S.C. § 1399(c)(5). Accordingly, seven percent interest on the unpaid withdrawal liability has been accruing since September 30, 2008, the date of Defendant's first missed payment. The amount of interest due from September 30, 2008 through August 16, 2011 is $101,029.88, with interest accruing daily at a rate of $124.86 per day. Schumacher Decl. ¶ 7; Ex. G.

Liquidated damages are mandatory if the employer is delinquent at the time the action is filed, the district court enters a judgment against the employer and the plan provides for such an award. See Northwest Administrators, Inc. v. Albertson's Inc., 104 F.3d 253, 258 (9th Cir. 1996). Here, Defendant was delinquent when this case was filed on May 4, 2011, and Defendant has not made any payments as of July 7, 2011. Miller Decl. ¶ 7; Ex. E. The Withdrawal Liability Procedures adopted by the Trustees provide for liquidated damages at the rate of twenty percent of the delinquent amount upon commencement of litigation. Miller Decl. ¶ 3; Ex. C. Because the Court recommends granting the motion for default judgment the three requirements for an award of liquidated damages are satisfied. Thus, Plaintiffs are entitled to recover liquidated damages of $130,209.00. Schumacher Decl. ¶ 7.

Attorney's fees and costs of action may be awarded to a Trust Fund or Employee Benefit Plan that receives a judgment in its favor. See 29 U.S.C. § 1132(g)(2)(D); Lads Trucking Co. v. Bd. of Trustees of the Western Conference of Teamsters Pension Trust Fund, 777 F.2d 1371, 1375 (9th

4

Cir. 1985) (an award of fees and costs is mandatory where there has been failure to make any withdrawal liability payments within the time prescribed). Plaintiffs have submitted the declaration of attorney Philip Miller to prove attorney's fees and costs. Mr. Miller calculates that in prosecuting this action, Plaintiffs have incurred a total of $12,225.50 in attorneys' and paralegal's fees through August 16, 2011. See Miller Decl. ¶ 22. Specifically, Mr. Miller states that his firm spent 41.2 hours of attorney time at rates ranging from $185.00 to $220.00 per hour, and 37.6 hours of paralegal time at rates ranging from $110.00 to $115.00 per hour prosecuting this case. Id. at ¶¶ 12-21. Costs incurred in connection with this matter include the filing fee of $350.00, service fees of $190.00 and investigative costs of $4,000.00. Id. ¶ 23. The total amount of fees and costs requested is $16,765.55. The amount of time expended, the billing rates and the costs are reasonable given the work performed.

ERISA mandates that: "an employer shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements" of ERISA regarding employer withdrawals. 29 U.S.C. § 1399(a). Here, the Plan requested information from Defendant in its June 8, 2009 letter. Miller Decl. Ex. F. Defendant has not provided any of the supporting documentation sought by the Plan pursuant to § 1399(a). Miller Decl. ¶ 11. Plaintiffs seek twenty-six categories of information that they believe are sufficient to enable the Plan to make the requisite determination about entities that may be under common control pursuant to ERISA. See 29 U.S.C. § 1301(b) ("For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."). Given the mandatory nature of § 1399(a), the Court recommends compelling Defendant to produce the requested information.

**CONCLUSION**

For the reasons set forth above, and for good cause shown, it is hereby recommended that default judgment be entered in the amount of: $651,046.00 in assessed withdrawal liability, $101,029.88 in interest from September 30, 2008 to August 16, 2011, $124.86 in daily interest from

5

August 17, 2011 through the date of judgment, $130,209.20 in liquidated damages, $12,225.50 in attorney's fees and $4,540.00 in costs. The Court also recommends awarding post-judgment interest at the legal rate on the entire judgment from the date of the judgment to the date of satisfaction pursuant to 28 U.S.C. § 1961. The Court also recommends compelling Defendant to produce the following documentation:

1. A complete copy of the Stock Certificates for Great Valley, identifying each owner of Great Valley and the number of shares they each own including any changes of ownership for the period January 1, 2005 to the present.

2. Identification by entity name and all fictitious business names of all trades or businesses and all real property, including the real property located at 2329 Fulton Avenue, Sacramento, California, in which each person or entity identified by the preceding request number 1 had an interest.

3. Identification of all spouses and children under the age of 21 of each person identified in the preceding request number 1.

4. Identification by name of each trust of which defendant's principal, Richard W. Keil, and/or his spouse is a trustor, trustee or beneficiary.

5. Identification by entity name and all fictitious business names of all trades or businesses and all real property, including the real property located at 2329 Fulton Avenue, Sacramento, California, in which each spouse and child under the age of 21 identified by the preceding request number 3 had an interest on or after January 1, 2005.

6. All contracts or agreements between Great Valley and its principal Richard W. Keil in effect during the period of January 1, 2005 to the present, including all addendums and amendments thereto.

7. All contracts or agreements between Great Valley and the spouse of Richard W. Keil in effect during the period of January 1, 2005 to the present, including all addendums and amendments thereto.

8. Great Valley's annual financial statements, both audited and unaudited, prepared on or after January 1, 2005.

9. Great Valley's accounting records for years ending on or after January 31, 2005, including the general ledger, trial balance, accounts payable journal, cash disbursements journal, balance sheets, income statements and cash flow statements.

10. Great Valley's federal and state income tax returns, including all supporting schedules, statements, forms and attachments filed therewith (e.g. Form 8594, Asset Acquisition Statement) for the years 2005 to the present.

11. Identification of all persons or entities that provided accountancy, tax and legal services, to Great Valley for the years 2005 to the present.

12. Identification of all persons or entities that provided accountancy, tax and legal services, to Richard W. Keil and/or his spouse, as individuals, for the years 2005 to the present.

13. All Form 1099s received by Great Valley for the years 2005 to the present.

14. All Form 1099s and Form W-2s issued by Great Valley for the years 2005 to the present, with Social Security and Employer Identification numbers redacted.

15. All notes or loans between Great Valley and its shareholders existing at any point during the years 2005 to the present.

16. All notes or loans between Great Valley and Richard W. Keil and/or his spouse existing at any point during the years 2005 to the present.

17. Each lease agreement relating to any real property in which Great Valley had or has a financial interest, including as a beneficiary of a trust, on or after January 1, 2005.

18. Each lease agreement relating to any real property, in which Richard W. Keil had or has a financial interest, including as a beneficiary of a trust, on or after January 1, 2005, including the real property located at 2329 Fulton Avenue, Sacramento, California.

19. Each lease agreement relating to any real property, including the real property located at 2329 Fulton Avenue, Sacramento, California, in which a spouse of Richard W. Keil had or has a financial interest, including as a beneficiary of a trust, on or after January 1, 2005.

20. Identification by entity name and all fictitious business names of all other trades or businesses other than Great Valley that operated on the real property located at 2329 Fulton Avenue, Sacramento, California.

21. Identification by name and/or fictitious business names all owners of any trades or businesses identified by the preceding request number 20.

22. Federal Form 1040 Individual Income Tax Return for Richard W. Keil and/or his spouse for 2005 to the present with lines 7, 12, 14, 17, 18, 21, 25, 27, 28, 29 and 58 unredacted (other entries may be redacted) and all supporting schedules, statements, forms and/or attachments (unredacted), including:
a. Form 1040 (Schedule C) Profit or Loss from Business (Sole Proprietorship)
b. Form 1040 (Schedule E) Supplemental Income and Loss
c. Form K-1s received for respective tax year
d. Form 4562 Depreciation and Amortization
e. From 4797 Sales of Business Property
f. Form 1040 (Schedule SE) Self-Employment Tax
g. All documents, including financial statements, general ledgers, Form 1099s (both received and issued), check registers and bank statements, for activities reported on Schedules C and E
h. All documents that list by description and/or amount items reported on Form 4562
i. All documents that list by description and/or amount items reported on Form 4797
j. All Form W-2s
k. All Form 1099s other than 1099-INT and 1099-DIV.

23. State Individual Income Tax Return (e.g. California Form 540) for Richard W. Keil for the years 2005 to the present and all supporting schedules, statements, forms and/or attachments.

24. Identification by names and business address of each tax professional that assisted in the preparation of the individual income tax returns for Richard W. Keil for the

7

years 2005 to the present.

25. Great Valley statement of liquidation or dissolution value for purposes of ERISA Section 4225 and documents relied upon in making this statement.

26. The name and last known address of each employee of Great Valley during the period January 1, 2005 to the present who was: a. Chief financial officer, b. Bookkeeper, c. General manager, d. Assistant general manager; or e. Corporate officer.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: August 30, 2011

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge